## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

_____

|  |  |  |
|---|---|---|
| JANICE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: |
| v. | ) | |
| | ) | |
| PYRAMID HEALTHCARE | ) | |
| MANAGEMENT d/b/a PYRAMID | ) | |
| PROPERTIES LLC; GEORGIA | ) | **JURY TRIAL DEMANDED** |
| PYRAMID VENTURE LLC; and | ) | |
| COLUMBUS CENTER LLC d/b/a | ) | |
| RIVER TOWNE CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW, Plaintiff Janice Clark ("Plaintiff" or "Ms. Clark") and submits the following Complaint for Damages and Equitable Relief against Defendants Pyramid Healthcare Management d/b/a Pyramid Properties LLC; Georgia Pyramid Venture LLC; and Columbus Center LLC d/b/a River Towne Center (collectively, "Defendants"), showing the Court as follows:

## INTRODUCTION

1.     This is an employment discrimination case arising from unlawful sexual harassment, sex discrimination, race discrimination, and retaliation in

violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981").

2.      Plaintiff herein claims (1) sexual harassment, (2) sex discrimination, (3) race discrimination, and (4) retaliation in violation of Title VII and (5) race discrimination and (6) retaliation in violation of Section 1981.

3.      Additionally, Defendants willfully failed to pay Plaintiff for all hours worked and for overtime in violation of the Fair Labor Standards Act, 29 U.S.C. 203 *et seq.* ("FLSA") and willfully paid Plaintiff substantially less than similarly situated men performing the same job in violation of the Equal Pay Act, 29 U.S.C. 201 *et seq.* ("EPA").

4.      Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff has satisfied all administrative prerequisites to perfect her claims of race and sex discrimination, disparate treatment, harassment, a hostile working environment, and retaliation under Title VII.

6.      Plaintiff timely filed a Charge of Discrimination with the EEOC and received a Notice of Right to Sue for her claims under Title VII within the last ninety

days. Plaintiff has complied with all other conditions precedent to the institution of this lawsuit.

## JURISDICTION AND VENUE

7.     Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a) and 42 U.S.C. § 2000e-5(f)(3).

8.     This Court has personal jurisdiction over all the parties to this action.

9.     Venue is proper under 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. §2000e-5(f)(3), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Middle District of Georgia.

## THE PARTIES

10.     Plaintiff Janice Clark was, at all relevant times, a citizen of the United States and a resident of the state of Georgia and submits herself to the jurisdiction of this Court.

11.     Plaintiff consents to be a party to this action under the FLSA, pursuant to 29 U.S.C. Section 216(b).

12.     Pyramid Healthcare Management d/b/a Pyramid Properties LLC is a foreign limited liability company headquartered in Brooklyn, New York with its principal office address at 1413 38th Street, Brooklyn, New York, 11218 and has

been doing business in the State of Georgia as Columbus Center LLC d/b/a River Towne Center and its parent corporation Georgia Pyramid Venture LLC.

13.     Pyramid Healthcare Management d/b/a Pyramid Properties LLC is subject to this Court's jurisdiction and may be served with process by delivering a copy of the Complaint and summons to its registered agent VCORP AGENT SERVICES, INC., 289 S Culver St, Lawrenceville, Georgia, 30046.

14.     Defendant Georgia Pyramid Venture LLC is a limited liability company organized and existing under the laws of the State of Georgia with its principal office address at 1413 38th Street, Brooklyn, New York, 11218.

15.     Defendant Georgia Pyramid Venture LLC is subject to this Court's jurisdiction and may be served with process by delivering a copy of the Complaint and summons to its registered agent VCORP AGENT SERVICES, INC., 289 S Culver St, Lawrenceville, Georgia, 30046.

16.     Defendant Columbus Center LLC d/b/a River Towne Center is a limited liability company organized and existing under the laws of the State of Georgia with its principal office address at 1413 38th Street, Brooklyn, New York, 11218. River Towne Center is operated at 5131 Warm Springs Road, Columbus, Georgia 31909.

17.     Defendant Columbus Center LLC d/b/a River Towne Center is subject

to this Court's jurisdiction and may be served with process by delivering a copy of the Complaint and summons to its registered agent VCORP AGENT SERVICES, INC., 289 S Culver St, Lawrenceville, Georgia, 30046.

18.    Defendants Pyramid Properties LLC, Georgia Pyramid Venture LLC and Columbus Center LLC d/b/a River Towne Center (hereinafter "Defendants Pyramid") were, at all relevant times, joint employers of Plaintiff Ms. Clark.

19.    Plaintiff was at all relevant times jointly employed by Defendants Pyramid within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), and Title VII, 42 U.S.C. § 2000e(f).

20.    At all relevant times, Defendants Pyramid collectively employed at least fifteen employees for purposes of constituting an "employer" under Title VII, 42 U.S.C. § 2000e.

21.    At all relevant times, Defendants Pyramid were enterprises covered by the FLSA, and as defined by 29 U.S.C. Section 203(r) and (s).

22.    Upon information and belief, the annual gross volume of sales made or business done by Defendants Pyramid is not less than $500,000.

## FACTS

23.    In November 2019, Plaintiff Janice Clark began working as Admissions Director at River Towne Center, a nursing home facility located at 5131 Warm

Springs Rd, Columbus, Georgia 31909.

24.     River Towne Center is an operating unit of Columbus Center LLC and its parent companies Pyramid Healthcare Management d/b/a Pyramid Properties LLC and Georgia Pyramid Venture LLC.

25.     As Admissions Director, Ms. Clark admitted patients, got referrals and authorizations, functioned as a liaison with hospitals, insurance companies, and patients' families, dealt with case managers, and performed marketing tasks.

26.     Ms. Clark is an African American female.

### *Defendants' Disparate Payments to Ms. Clark and a White Male*

27.     When Ms. Clark first became employed, a white male named Cason Hammock also worked in admissions.

28.     Ms. Clark and Mr. Hammock performed substantially similar job duties, and both of their jobs included management tasks, marketing tasks, and working directly with case managers.

29.     In June or July 2020, Mr. Hammock was suspended for calling an African American social worker a "ghetto, ratchet bitch."

30.     While he was suspended, Ms. Clark learned that he was salaried and making about $65,000 a year, while she was making about $21.87 hourly, even though he was not more qualified than Ms. Clark was and had only started working

there about a month or two before she had.

31.     Additionally, Ms. Clark did almost all the work while Mr. Hammock received the bonuses and credit.

32.     Ms. Clark spoke to Vice President Judah Schiller about her role and Mr. Hammock's role and explained that Mr. Hammock was receiving credit for a lot of her work and seemed not to be doing his work, instead staying at home and sending an email about admissions at the end of the day.

33.     Ms. Clark spoke to then-Administrator Luther Reeves about getting a raise, and Mr. Reeves told her, "I know, I know, you're upset about what Cason makes." However, Ms. Clark's pay rate remained the same, with Mr. Hammock making about $20,000 a year more than she made.

34.     Ultimately, Mr. Hammock was terminated in August or September 2020 after he threatened an older white woman, who discovered he had three felonies.

35.     Following Mr. Hammock's termination, the alleged "marketing" position stayed open for months, but Ms. Clark continued doing the type of work encompassed by the position, and the company continued to receive referrals.

### Sexual Harassment and Retaliation by Ms. Clark's Direct Supervisor

36.     In or around early October 2020, Michael "Mike" Lake assumed the

Interim-Administrator role at River Towne Center and became Ms. Clark's direct supervisor.

37.   Soon after his arrival, Mr. Lake began to subject Ms. Clark to repeated, unwelcome sexual harassment.

38.   Mr. Lake got Ms. Clark's cellphone number and started texting her at night, emphasizing that he was at his hotel room "bored."

39.   Mr. Lake initially sent Ms. Clark texts about seemingly innocent topics, such as school, but after Ms. Clark responded, Mr. Lake replied with more suggestive texts, such as "Oh, you're chatty tonight. I like that," or "If things go well, we can leave together."

40.   In addition to Mr. Lake's late-night text messages that made Ms. Clark uncomfortable, coworkers told Ms. Clark that Mr. Lake was often staring at her buttocks.

41.   By the end of October, Mr. Lake's sexual harassment escalated to unwanted touching.

42.   On October 29, Mr. Lake called Ms. Clark into his small office, claiming that he was having issues with his computer.

43.   Ms. Clark stood behind him while he was seated at the desk.

44.   Mr. Lake quickly turned his chair around to face Ms. Clark and gripped

her inner thigh towards her crotch.

45.    Ms. Clark jumped away immediately and said, "Sir, that was inappropriate.

46.    Mr. Lake claimed it was an accident, and Ms. Clark left his office.

47.    After Ms. Clark refused Mr. Lake's unwanted touching, Mr. Lake became extremely hostile towards her.

48.    Later the same day of the unwanted touching, during a conversation with Mr. Lake about calling a hospital case manager, Mr. Lake threatened Ms. Clark's job, telling her, "You will call them back, or you will regret it." Mr. Lake then yelled, "You don't give a shit about the patients."

49.    Ms. Clark, shocked by his language, told him that she did care and left the conversation immediately thereafter.

50.    A few days later, during another work-related conversation, Mr. Lake yelled, "All you do is bitch and complain."

### *Ms. Clark's Complaints and Defendants' Failure to Correct Harassment and Disparate Handling of Complaints*

51.    That same day, Ms. Clark called Managing Member Isaac Fischman to complain about Mr. Lake's conduct, but Mr. Fischman responded to Ms. Clark's complaints by laughing and then replied that Ms. Clark's concerns would be addressed once the state audit surveying the nursing home was completed.

52.    On November 9, 2020, Mr. Lake told Ms. Clark to join him in a meeting with the local Vice President Ralph Montenaro and then-Director of Nursing David Mann.

53.    During the meeting, which Ms. Clark expected to be about her complaints about Mr. Lake, Mr. Lake claimed that Ms. Clark needed to fix her "bad attitude."

54.    After Mr. Lake stopped speaking, Ms. Clark began to talk about the sexual harassment she experienced, mentioning Mr. Lake's "late-night texts" and "inappropriate conduct," but Mr. Lake almost immediately stood up, said, "This is bullshit," and left the meeting.

55.    For about five to ten minutes, Ms. Clark continued telling Mr. Montenaro and Mr. Mann about what Mr. Lake had done. She described the unwanted touching and further elaborated on the inappropriate text messages.

56.    Mr. Montenaro did not address Ms. Clark's complaints, instead telling Ms. Clark as he left the meeting, "Well, Janice. Things happen. Hell, I've probably been accused of harassing somebody else."

57.    Mr. Mann just told her, "From now on, come to me about everything you need. Don't even talk to him. He's only here in the interim."

58.    Because Mr. Fischman, Mr. Montenaro, and Mr. Mann all failed to

address her complaints or correct the harassment, Ms. Clark realized that Defendants were not going to take her complaints seriously or protect her from Mr. Lake's conduct.

59.     Ms. Clark then tried to avoid Mr. Lake whenever possible; however, she had to see him during morning meetings.

60.     During morning meetings, Mr. Lake began skipping over and ignoring Ms. Clark and asking the Assistant Director of Nursing, Morgan Currie, questions about admissions instead.

61.     The Supply Manager, Jeff Smith, even said, "Janice, I guess you're not the Director of Admissions anymore."

62.     Ms. Clark asked Mr. Lake if she still had to go to the meetings, and Mr. Lake responded, "Get over yourself."

63.     On December 7, Mr. Lake asked Ms. Clark to go to his office again to get a report to run on his computer.

64.     Ms. Clark stood behind Mr. Lake, and he turned around in his chair, facing her breasts.

65.     Mr. Lake began to point at a coffee stain on Ms. Clark's shirt and started moving his pointer finger in the direction of the spot, which was on her breast, asking, "Do you know you have a spot right there?"

66.    Ms. Clark was able to move away before he touched her breast and said, "No, sir, not today," and walked out of his office.

67.    Because management ignored her previous complaints, she felt it was pointless to try making another complaint.

68.    On December 10, Tukesha Mack, one of Ms. Clark's white coworkers, was assaulted by Mr. Lake in his office.

69.    In contrast to its handling of Ms. Clark's complaints, management took Ms. Mack's complaints about Mr. Lake's inappropriate touching seriously, removed Mr. Lake from the premises, and later terminated Mr. Lake's employment.

70.    On December 11, 2020, Mr. Mann called Ms. Clark and apologized for not taking her complaints seriously, stating that if management had, the situation with Ms. Mack would never have happened.

### *Defendants' Retaliation Against Ms. Clark*

71.    On February 1, 2021, Ms. Clark filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting claims of sexual harassment, a hostile working environment, and race discrimination under Title VII of the Civil Rights Act of 1964.

72.    A few days after Ms. Clark filed her Charge, management began to ignore her, avoid speaking with her, and nitpick her work.

73.     Previously, management asked Ms. Clark to give status reports about admissions during daily morning meetings.

74.     However, after she filed her Charge, then-administrator David Mann stopped asking Ms. Clark to give status reports and instead regularly asked employees outside of her department questions about admissions.

75.     In about mid-February, a new interim administrator, Jeffery Dunn, arrived, and within a few days of his arrival, he also started skipping over Ms. Clark during morning meetings.

76.     Mr. Dunn, Mr. Mann, and other members of management avoided speaking with Ms. Clark.

77.     Mr. Dunn started nitpicking Ms. Clark's work and trying to find reasons to penalize her. She did not face this type of scrutiny before she filed her Charge.

78.     Ms. Clark became aware that other employees have been offered monetary incentives throughout February to work overtime. Ms. Clark was never informed about this opportunity, and Mr. Dunn brushed her off when she asked about the incentives.

79.     On March 10, 2021, Mr. Dunn tried to write Ms. Clark up for answering work-related calls while she was not at the office. He signed her timesheet but told her to tell people to call the office instead of her cell phone in the future.

80.     However, Defendants had included Ms. Clark's personal cell phone number on a contact list circulated to employees, and she received work-related phone calls throughout the day to her personal cell phone from doctors, other employees, and residents.

81.     Ms. Clark said that she felt as though this effort to write her up was retaliation and asked whether she could receive a copy of the write-up if she signed it.

82.     Mr. Dunn told Ms. Clark that he needed to check if he could give her a copy, and she refused to sign the write-up. Mr. Dunn then told her to clock out and leave the premises immediately.

83.     The same day, March 10, 2021, during a meeting with Mr. Dunn, Mr. Mann, Letha Hickman, and Bryan Threadgill, who worked closely with Ms. Clark in admissions, Mr. Dunn told Mr. Threadgill to stay out of the building and no longer look at referrals unless Ms. Clark sent them to him directly. This was an effort to make Ms. Clark's job more difficult.

### Defendants' Failure to Pay for Hours Worked and Failure to Pay Overtime

84.     Management also subjected Ms. Clark to additional payment issues.

85.     On January 13, 2021, Mr. Mann, the Administrator, informed Ms. Clark that employees would no longer be paid for work completed from home.

86.     Though Ms. Clark was an hourly employee, she received important work-related phone calls throughout the week that she had to answer, even when she was not at the office.

87.     Ms. Clark typically worked about fifteen hours overtime on a weekly basis, with much of this work being completed at home.

88.     Additionally, the former Administrator, Mr. Reeves, had authorized Ms. Clark to work from home on Fridays in order to finish her degree while still performing work for Pyramid, but Mr. Mann told Ms. Clark that she needed to take unpaid PTO on Fridays then now on.

89.     However, when Ms. Clark took PTO on Friday, January 22, 2021, Ms. Clark was still receiving and answering work-related phone calls.

90.     The disparate treatment, hostile work environment, harassment, and retaliation became intolerable and Ms. Clark had no choice but to submit her resignation on April 13, 2021.

## COUNT I
## Sexually Hostile Work Environment in Violation of Title VII

91.     Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

92.     At all relevant times, Plaintiff was an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

93.    Defendants Pyramid are a joint employer of Plaintiff as defined by Title VII, 42 U.S.C. § 2000e *et seq*. and jointly liable for the violations of Title VII specified herein.

94.    Plaintiff is in a protected class based on her gender (female).

95.    Plaintiff was subjected to sexual harassment and a sexually hostile work environment by Lake, for which Defendants Pyramid are liable as a joint employer.

96.    Plaintiff was subjected to severe and pervasive sexual comments, sexual advances, and unwanted physical touching of a sexual nature and efforts to touch her of a sexual nature by Lake, as outlined above.

97.    Plaintiff repeatedly reported the sexually hostile work environment and sexual harassment to management, including Fischman, Montenaro, and Mann.

98.    At all times relevant to this action, Defendants knew or should have known of Lake's sexual harassment of Plaintiff and the existence of a sexually hostile work environment but failed to take remedial action to prevent or correct the harassment or protect Plaintiff.

99.    Defendants Pyramid failed to exercise reasonable care to prevent and promptly correct the harassing behavior after Plaintiff repeatedly reported Lake's harassment to management.

100.   Defendants Pyramid failed to post, publish or disseminate a sexual harassment policy that gave employees and management guidance on what constitutes sexually harassing behavior, steps to take in the event sexual harassment occurs, prevention of sexual harassment, remedial steps Defendants would take in the event sexual harassment is reported or notice that employees would not suffer retaliation in the event they reported sexual harassment.

101.   Defendants Pyramid failed to provide managers or employees training on avoiding, preventing and remediating sexual harassment.

102.   Ms. Clark, recognizing that she would continue to be subjected to retaliation, and her workplace having become intolerable she had no choice but to submit her resignation on April 13, 2021.

103.   At all relevant times, Lake was acting in the course and scope of his employment with Pyramid Defendants, making Defendants vicariously liable for his actions under the legal doctrine of *respondeat superior*.

104.   Defendant lacks any legitimate justification for subjecting Plaintiff to discrimination, and/or any such purported justifications are mere pretext for race discrimination.

105.   Defendant's above-pled actions constitute sexual harassment and a sexually hostile work environment in violation of Title VII.

106.   Defendant's above-pled actions constitute sexual harassment and a race discrimination in violation of Title VII.

107.   Defendant's actions in subjecting Plaintiff to sexual harassment and a sexually hostile work environment were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

108.   As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, humiliation, and other indignities.

109.   As a result of Defendant's violations of Title VII, Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory and punitive damages, reasonable attorneys' fees and costs, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

**COUNT II**
**Sex Discrimination in Violation of Title VII: Disparate Treatment**

110.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

111.   At all relevant times, Plaintiff was an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

112.   Defendants Pyramid are a joint employer of Plaintiff as defined by Title VII, 42 U.S.C. § 2000e *et seq*. and jointly liable for the violations of Title VII specified herein.

113.   Plaintiff is in a protected class based on her gender (female).

114.   Plaintiff occupied the same job as a higher-paid male employee outside of her protected class.

115.   Plaintiff was qualified for the position to which she was hired, but was paid less than her male coworker, even though he was not more qualified than Plaintiff was and had only started working there about a month or two before she had, and even though she did almost all the work.

116.   Plaintiff's workplace became intolerable and she had no choice but to submit her resignation on April 13, 2021.

117.   Defendant lacks any legitimate justification for subjecting Plaintiff to discrimination, and/or any such purported justifications are mere pretext for gender discrimination.

118.   Defendant's above-pled actions constitute gender discrimination in violation of Title VII.

119.   Defendant's actions in subjecting Plaintiff to discrimination based on her gender were willful, deliberate, and intended to cause Plaintiff harm, and/or were

committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

120.   Plaintiff's gender was a "motivating factor" in Defendant's decisions to subject her to discrimination and based on her gender as pled above.

121.   As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, humiliation, and other indignities.

122.   As a result of Defendant's violations of Title VII, Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory and punitive damages, reasonable attorneys' fees and costs, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT III
## Race Discrimination in Violation of Title VII

123.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

124.   At all relevant times, Plaintiff was an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq*.

125.   Defendants Pyramid are a joint employer of Plaintiff as defined by Title VII, 42 U.S.C. § 2000e *et seq.* and jointly liable for the violations of Title VII specified herein.

126.   Plaintiff is in a protected class based on her race (African American).

127.   Plaintiff occupied the same job as a higher-paid white employee outside of her protected class.

128.   Plaintiff was qualified for the position to which she was hired, but was paid less than her white coworker, even though he was not more qualified than Plaintiff was and had only started working there about a month or two before she had, and even though she did almost all the work.

129.   Defendant subjected Plaintiff to discrimination based on her race (African American), subjected her to disparate treatment, and failed to prevent or correct the sexually hostile work environment it subjected her to until her white co-worker complained.

130.   One of Plaintiff's white coworkers was assaulted by Mr. Lake in his office, and in contrast to its handling of Plaintiff's complaints, Defendants took Plaintiff's white coworker's complaints about Lake seriously, removed Lake from the premises, and later terminated Lake's employment.

131.   Plaintiff's workplace became intolerable and she had no choice but to

submit her resignation on April 13, 2021.

132.   Defendant lacks any legitimate justification for subjecting Plaintiff to discrimination, and/or any such purported justifications are mere pretext for race discrimination.

133.   Defendants Pyramid failed to post, publish or disseminate a policy prohibiting race discrimination in the workplace that gave employees and management guidance on what constitutes race discrimination, steps to take in the event race discrimination occurs, prevention of race discrimination, remedial steps Defendants would take in the event race discrimination is reported or notice that employees would not suffer retaliation in the event they reported race discrimination.

134.   Defendants Pyramid failed to provide managers or employees training on avoiding, preventing and remediating race discrimination.

135.   Defendant's above-pled actions constitute race discrimination in violation of Title VII.

136.   Defendant's actions in subjecting Plaintiff to discrimination based on her race were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

137.   Plaintiff's race was a "motivating factor" in Defendant's decisions to subject her to discrimination and based on her race as pled above.

138.   As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, humiliation, and other indignities.

139.   As a result of Defendant's violations of Title VII, Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory and punitive damages, reasonable attorneys' fees and costs, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT IV
## Retaliation in Violation of Title VII

140.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

141.   At all relevant times, Plaintiff was an "employee" of Defendant as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq*.

142.   Defendants Pyramid are a joint employer of Plaintiff as defined by Title VII, 42 U.S.C. § 2000e *et seq*. and jointly liable for the violations of Title VII specified herein.

143.   Plaintiff engaged in statutorily protected activity by repeatedly objecting to and complaining about sexual harassment, a sexually hostile work environment, and discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., as outlined above, and by filing an EEOC Charge.

144.   Title VII prohibits Defendant from retaliating against Plaintiff because she opposed, objected to, and complained against discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

145.   A few days after Ms. Clark filed her EEOC Charge, management began to retaliate against her by ignoring her, avoiding speaking with her, nitpicking her work, writing her up pretextually, and making her job more difficult.

146.   Defendants did not post, disseminate or provide an anti-retaliation policy for employees.

147.   Faced with ongoing retaliation, Plaintiff's workplace became intolerable and she had no choice but to submit her resignation on April 13, 2021.

148.   Defendants' actions constitute unlawful intentional retaliation in violation of Title VII.

149.   Defendant lacks any legitimate justification for subjecting Plaintiff to retaliation, and/or any such purported justifications are mere pretext for retaliation.

150.   Defendant's retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of Title VII.

151.   Defendant's retaliatory actions were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

152.   As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages including emotional distress, inconvenience, humiliation, and other indignities.

153.   As a result of Defendant's retaliatory conduct, Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory and punitive damages, reasonable attorneys' fees and costs, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

154.   Defendants Pyramid are a joint employer and are jointly liable for the violations of Title VII specified herein.

**COUNT V**
**Race Discrimination in Violation of Section 1981**

155.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

156.   Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant and Defendant compensated Plaintiff for her work.

157.   Plaintiff performed her contractual obligations under her employment agreement.

158.   42 U.S.C. § 1981 prohibits Defendant from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of her employment agreement with Defendant.

159.   Defendant subjected Plaintiff to discrimination and to a hostile work environment based on her race (African American) in violation of 42 U.S.C. § 1981.

160.   Plaintiff occupied the same job as a higher-paid white employee outside of her protected class.

161.   Plaintiff was qualified for the position to which she was hired, but was paid less than her white coworker, even though he was not more qualified than Plaintiff was and had only started working there about a month or two before she had, and even though she did almost all the work.

162.   Defendant subjected Plaintiff to discrimination based on her race (African American), subjected her to disparate treatment, and failed to prevent or correct the sexually hostile work environment it subjected her to until her white co-

worker complained.

163.   One of Plaintiff's white coworkers was assaulted by Mr. Lake in his office, and in contrast to its handling of Plaintiff's complaints, Defendants took Plaintiff's white coworker's complaints about Lake seriously, removed Lake from the premises, and later terminated Lake's employment.

164.   Plaintiff's workplace became intolerable and she had no choice but to submit her resignation on April 13, 2021.

165.   Defendant's actions in subjecting Plaintiff to discrimination violated Section 1981, which prohibits race discrimination in the making and enforcement of contracts, including employment contracts.

166.   Defendant violated Plaintiff's rights under 42 U.S.C. § 1981 by subjecting her to race discrimination and disparate treatment.

167.   Plaintiff's race was a but-for factor in Defendant's decision(s) to subject her to discrimination and disparate treatment as pled above.

168.   As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including emotional distress, inconvenience, humiliation, and other indignities.

169.   Defendant's actions were willful, wanton, and intentional.

170.   Defendant's actions were reckless and were taken with willful

disregard of the probable consequences of its actions.

171.   Pursuant to 42 U.S.C. §§ 1981 and 1988, Plaintiff is entitled to damages in an amount to be determined by the trier of fact, including back pay and lost benefits, compensatory damages, punitive damages, and attorneys' fees and costs of litigation, as well as all other relief recoverable under § 1981.

### COUNT VI
### Retaliation in Violation of Section 1981

172.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

173.   42 U.S.C. § 1981 prohibits Defendants from retaliating against Plaintiff because she opposed, objected to, and complained against race discrimination prohibited by 42 U.S.C. § 1981.

174.   Plaintiff engaged in statutorily protected activity by objecting to and complaining against race discrimination prohibited by 42 U.S.C. § 1981 when she filed her EEOC Charge.

175.   A few days after Ms. Clark filed her Charge, management began to ignore her, avoid speaking with her, nitpick her work, write her up pretextually, and make her job more difficult.

176.   Plaintiff's workplace became intolerable and she had no choice but to submit her resignation on April 13, 2021.

177.   Defendant has subjected her to retaliation in violation of 42 U.S.C. §
1981.

178.   Defendant's above-pled retaliatory conduct toward Plaintiff constitutes
unlawful retaliation against Plaintiff in violation of 42 U.S.C. § 1981.

179.   Defendant's actions were willful, wanton, and intentional.

180.   Defendant's actions were reckless and were taken with willful
disregard of the probable consequences of its actions.

181.   As a direct and proximate result of Defendants' unlawful actions,
Plaintiff has suffered damages including emotional distress, inconvenience,
humiliation, and other indignities.

182.   Pursuant to 42 U.S.C. §§ 1981 and 1988, Plaintiff is entitled to damages
in an amount to be determined by the trier of fact, including back pay and lost
benefits, compensatory damages, punitive damages, and attorneys' fees and costs of
litigation, as well as all other relief recoverable under § 1981.

**COUNT VII**
**Failure to Pay Overtime Compensation in Violation of the FLSA**

183.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as
if they were fully set forth herein.

184.   Defendants' failure to pay Plaintiff in accordance with Section 207 of
the FLSA was in willful disregard of the overtime compensation requirements of the

FLSA.

185.    Defendants did not fully compensate Plaintiff for all her hours worked for Defendants in excess of forty (40) hours per week as required by Section 207 of the FLSA.

186.    Plaintiff was a victim of a policy and plan by Defendants to deny Plaintiff overtime compensation required by the FLSA.

187.    On January 13, 2021, Defendant informed Plaintiff that employees would no longer be paid for work completed from home.

188.    This policy deprived Plaintiff of payment for compensable work.

189.    Though Plaintiff was an hourly employee, she received important work-related phone calls throughout the week that she had to answer, even when she was not at the office.

190.    Ms. Clark typically worked about fifteen hours overtime on a weekly basis, with much of this work being completed at home.

191.    Defendants' failure to pay Plaintiff in accordance with Section 207 of the FLSA was in willful disregard of the overtime compensation requirements of the FLSA.

192.    Defendants' failure to compensate Plaintiff for off the clock work and for work performed at home was in willful violation of the FLSA.

193.   Defendants knew and/or showed reckless disregard for the matter of whether their conduct was prohibited by the FLSA.

194.   As a result of Defendants' FLSA violations, Defendants are liable to Plaintiff for unpaid overtime compensation in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

## COUNT VIII
## Failure to Pay for All Hours Worked in Violation of the FLSA

195.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

196.   Defendant failed to pay Plaintiff for all hours she worked from home, in violation of the minimum wage provisions of 29 U.S.C. § 206.

197.   On January 13, 2021, Defendant informed Plaintiff that employees would no longer be paid for work completed from home.

198.   This policy deprived Plaintiff of payment for compensable work.

199.   Though Plaintiff was an hourly employee, she received important work-related phone calls throughout the week that she had to answer, even when she was not at the office.

200.   When Plaintiff took PTO on Friday, January 22, 2021, Plaintiff still received and had to answer work-related phone calls.

201.   Defendants' failure to pay Plaintiff in accordance with Section 207 of the FLSA was in willful disregard of the minimum wage compensation requirements of the FLSA.

202.   Defendants' failure to compensate Plaintiff for off the clock work and for work performed at home was in willful violation of the FLSA.

203.   Defendants knew and/or showed reckless disregard for the matter of whether their conduct was prohibited by the FLSA.

204.   As a result of Defendants' FLSA violations, Defendants are liable to Plaintiff for compensation for all hours she worked from home, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

## COUNT IX
### Sex Discrimination in Violation of the Equal Pay Act

205.   Plaintiff incorporates by reference paragraph numbers 23 through 90 as if they were fully set forth herein.

206.   Plaintiff was an employee of Defendants within the meaning of the Equal Pay Act, 29 U.S.C. §206(d)(1), *et seq.* ("EPA").

207.   Defendants were joint employers of Plaintiff within the meaning of the EPA.

208.   Plaintiff was employed, and paid, by Defendants.

209.   Defendants violated the EPA by paying Plaintiff less than male employee Hammock for equal work performance in a job requiring substantially the same skill effort, responsibility, and working conditions as Plaintiff's.

210.   Hammock had skills, effort, responsibility, and seniority that were equivalent to, or less than, those of Plaintiff.

211.   Hammock was salaried and making about $65,000 a year, while Plaintiff was making about $21.87 hourly, even though Hammock was not more qualified than Plaintiff was and had only started working there about a month or two before she had.

212.   Defendants' conduct by paying Plaintiff less than Hammock violated the EPA.

213.   Defendants' violations of the EPA were willful.

214.   Plaintiff spoke to Reeves about getting a raise, and Mr. Reeves told her, "I know, I know, you're upset about what [Hammock] makes."

215.   However, Plaintiff's pay rate remained the same, with Hammock making about $20,000 a year more than she made.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands **A TRIAL BY JURY** and:

(1)    That this Court adjudicate and declare that Defendants have violated

Plaintiff's federally protected rights as pled above;

(2)    That this Court permanently enjoin Defendants from committing similar violations in the future;

(3)    That this Court find that Defendants' violations of the FLSA were willful and impose a three-year statute of limitations period for Plaintiff's FLSA claims;

(4)    That this Court find that Defendants' violation of the EPA was willful and impose a three-year statute of limitations period for Plaintiff's EPA claim;

(5)    That this Court award Plaintiff back pay, all lost wages and benefits, and all other benefits of employment reducible to a dollar value;

(6)    That this Court award Plaintiff pre-judgment and post-judgment interest as required by law;

(7)    That this Court award Plaintiff compensatory damages for emotional pain and suffering as determined by the enlightened conscience of a jury;

(8)    That this Court award Plaintiff punitive damages pursuant to Title VII, 42 U.S.C. § 1981, and all other applicable federal and state laws in an amount to be determined by the enlightened conscience of a jury to be

sufficient to punish Defendants for their conduct toward Plaintiff and deter Defendants from similar conduct in the future;

(9)     That this Court award Plaintiff all unpaid minimum wage and overtime compensation and an amount equal to such unpaid compensation as liquidated damages;

(10)    That this Court award Plaintiff her reasonable attorneys' fees and expenses; and

(11)    That this Court grant such additional relief as may be just and proper.

Respectfully submitted this 21st day of December 2023.

BUCKLEY BALA WILSON MEW LLP

*/s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@bbwmlaw.com
Camille J. Mashman
Georgia Bar No. 612930
cmashman@bbwmlaw.com

600 Peachtree Street NE, Suite 3900
Atlanta, Georgia 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| JANICE CLARK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PYRAMID HEALTHCARE )<br>MANAGEMENT d/b/a PYRAMID )<br>PROPERTIES LLC; GEORGIA )<br>PYRAMID VENTURE LLC; and )<br>COLUMBUS CENTER LLC d/b/a )<br>RIVER TOWNE CENTER, )<br>)<br>Defendants. ) | Civil Action No.:<br><br><br>**JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

This is to certify that on this 21st day of December 2023 I have electronically

filed this Complaint for Damages and Equitable Relief with the Clerk of Court using

the CM/ECF system which will automatically send email notification of such filing

to all attorneys of record.

BUCKLEY BALA WILSON MEW LLP

*/s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@bbwmlaw.com